KOGAN, Chief Justice.
Under the provisions of article V, section 9 of the Florida Constitution, the Supreme Court of Florida is responsible for certifying its findings and recommendations concerning the need for increasing or decreasing the number of judges required to consider cases filed before the respective courts. We appreciate the fiscal ramifications of certifying the need for new judges and have adopted a policy of doing so only when we are certain that such a need exists. To this end, we have analyzed case filings and evaluated the growth in judicial workload over the past several years. Our analysis has included consideration of a variety of supplemental data related to workload as well. These data and the requests of the various circuit and district courts are being made available to the Legislature through the Office of the State Courts Administrator.
After carefully reviewing requests for a total of 31 new judges, we hereby certify the need for 13 additional circuit judges, 5 additional county judges, and no additional appellate judges, for a total of 18 new judicial positions. A comparison of the requests for new judges filed by the respective courts and the new judges certified as needed for Fiscal Year 1998-99 follows:[1]
[[Image here]]
This certification is dependent upon receipt of the increase in resources requested in the Fiscal Year 1998-99 Legislative Budget Request for the State Courts System.
The criteria for certification of the need for additional judges in the district courts of appeal are set forth in rule 2.035(b)(2), Florida Rules of Judicial Administration. The Court did not receive any requests for additional judges from the five district courts of appeal. The last new judgeships for the district courts were authorized in 1993. Since that time the numbers of. annual filings in each district court have risen steadily. It is forecast that a total of 23,523 cases will be filed in the district courts in 1998, a greater than 27 percent increase since 1993.
The district courts have each addressed increased workload pressures through various means. They have improved internal operating procedures, established central legal research staff to handle selected matters, and assigned senior (retired) judges to hear appeals on a temporary basis. The First District Court of Appeal continues to utilize an appellate pre-briefing conference program combining both mediation and case management, as well as two specialized divisions to *329 handle general and administrative cases respectively. We encourage the district courts to continue to explore and develop alternative and creative means to efficiently and fairly hear the cases brought before them. Such efforts have enabled the district courts to address increases in judicial workload without the continued addition of new appellate judges.
Last year, this Court directed the Judicial Management Council to conduct an in-depth study of workload, jurisdiction and related policy issues for the district courts of appeal. The Council’s Committee on Appellate Court Workload and Jurisdiction completed its work in this regard and its report was considered by the full Council in October 1997. Among other recommendations, the Council advised this Court to adopt a new appellate court workload standard of 225 dispositions after submission on the merits per judge and an additional appellate court workload standard of 385 case filings per judge. These standards are significantly higher than the current standard of 250 case filings per judge. These standards reflect the infusion of staff support and other resources over the last decade which have enabled the district courts to keep up with workload increases. The two standards, whether considered separately or together, represent the level at which a district court, presumptively, is in need of additional judicial resources. It is projected that in 1998 the statewide averages for dispositions on the merits per judge and filings per judge will be 209 and 385 respectively.
The Judicial Management Council also considered alternatives to balance workload among the district courts, including redrawing the boundaries of the current districts and creating one or more new districts. The Council recommended that a newly constituted committee consider specific alternatives for additional district courts of appeal. It is our judgment that the certification of additional judges can be withheld until the work of this committee is concluded, prior to the 1999 Legislative Session.
For the foregoing reasons we are, once again, not certifying the need for any additional district court of appeal judgeships. However, we strongly urge the Legislature to fund the budget requests of the district courts of appeal for mediation services, additional senior (retired) judge days, central legal staff attorneys, and computer technology. Funds for the computer upgrade are important, because they will assure that all the appellate courts are year 2000 compliant.
The criteria for certification of the need for judges in trial courts are set forth in rule 2.035(b)(1), Florida Rules of Judicial Administration. Consistent with previous practice, we have placed the greatest weight on quantitative data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable measure of workload at the trial court level is total case filings per judge. Courts near or above a threshold of 1,865 filings , per judge are presumed to be working beyond capacity, though that data alone is not sufficient to either guarantee or preclude a certification of need.
In addition to filings data, other quantitative and qualitative data on factors described in rule 2.035(b)(1)(B), Florida Rules of Judicial Administration, were considered. These criteria include county judge service on the circuit bench, the availability and use of senior (retired) judges, the availability and use of supplemental hearing officers, the use of alternative dispute resolution, the number of jury trials, the number of hearings involving foreign language interpretations, the geographic size of a circuit, special law enforcement activities, the availability and use of case-related support staff and case management policies and practices, the nature and complexity of cases, and caseload trends. This supplemental information was extremely useful in evaluating the requests of the various trial courts.
After reviewing these factors, we find it necessary to certify the need for 13 additional circuit court judges for Fiscal Year 1998-99, as follows: one additional circuit court *330 judge each for the Third, Fourth, Ninth, Tenth, Twelfth, Thirteenth, Eighteenth, Nineteenth and Twentieth judicial circuits; and two additional circuit court judges each for the Sixth and Seventeenth judicial circuits.
■ The overall workload of Florida’s circuit courts continues to grow at a steady rate. From actual 1993 data through forecasted 1998 data, total filings are projected to increase fourteen percent. Not only are circuit court filings increasing, but also the collective perception of the trial court bench is that many categories of cases being filed are more labor-intensive than in previous years. Changes in the statutes, cáse law, and court procedures in recent years have necessitated more hearings for various types of eases, mandated priority handling for certain matters, and required judges to render written findings of fact and conclusions of law more frequently. Often these changes cannot be measured in terms of a need for full-time judicial positions in a particular jurisdiction, but instead serve to gradually increase workload across the board.
In formulating their requests, the circuit courts stressed the significant workload impact of reopened bases, variations in the complexity of caseloads, the severity of criminal offenses in their jurisdictions, more numerous and lengthy jury trials, and dramatic increases in self-represented litigants. We gave careful consideration to all such factors in establishing the necessity for additional judgeships not only for courts near or above the threshold, but also for courts which are somewhat below the standard as well. Seven of the courts for which we are currently certifying a need for an additional circuit court judge or judges are forecast to exceed the 1,865 filings per judge threshold in 1998, including the Sixth and Seventeenth judicial circuits, for which we have certified the need for two additional circuit court judgeships. We also certify the need for one additional circuit court judge each to the Fourth, Thirteenth, Eighteenth, and Nineteenth judicial circuits, which are expected to have 1998 workloads slightly below the threshold.
Although we recognize that other circuits which requested judgeships are faced with mounting workload pressures, we continue to limit the number of new judges certified for the circuits and supplement the available judicial resources with senior (retired) judges. We also encourage such circuits to maximize the use of county court judges on temporary assignment to the circuit bench where, possible. In addition to the effective and cost-efficient use of senior (retired) judges, trial courts have employed an array of resources and case management strategies including: differentiated case management to consolidate and expedite certain types of cases; the use of general or special masters, child support enforcement hearing officers, and traffic hearing officers; court-ordered mediation or arbitration of family, civil, and selected juvenile matters; and the assignment of trial court law clerks to assist with case reviews, case management, and legal research. This Court encourages the continued use of these alternatives.
One particular alternative, supplemental hearing officers, has received much attention as of late. Child support enforcement hearing officers were authorized from state funds by the 1997 Legislature, a first for Florida’s trial' courts. 'This was in response to projected workload increases expected from a new child support enforcement initiative by the Florida Department of Revenue. Studies conducted under the auspices of the Court Statistics and Workload Committee indicate that supplemental hearing officer positions such as these do not generally translate to the equivalent of circuit or county court judges, with the possible exception of traffic hearing officers. Supplemental hearing officers, particularly at the circuit court level, provide predominantly qualitative improvements in court services to litigants. For example, they allow more time to be allocated to each case than busy judicial schedules will often allow. They also streamline the court process for litigants and allow judges to make bétter use of their time. However, supplemental hearing officers are .difficult to allocate on a statewide basis due to the varied use of, and acceptance for, these staff at *331 the local level. Many judicial matters require the attention of circuit court judges either by rule, statute, custom, or public expectation. While supplemental hearing officers may be an appropriate response to some increases in judicial workload, they are only one of a spectrum of resources that may be applied as the situation demands or is determined by this Court to be appropriate.
As in the circuit courts, caseloads in Florida’s county courts continue to increase at a steady rate. County court case filings, not including those categories traditionally excluded from the certification calculus such as worthless checks and civil traffic case filings, increased eight percent from 1994 to 1996. This increase is attributable to growth in both criminal and civil case filings. We considered this increase in evaluating the need for additional county judges. We relied principally on case filings data that were adjusted to include only criminal, civil, driving under the influence, and other criminal traffic cases. As in the past, worthless check cases and civil traffic infractions were not included in the threshold. This is due to the volume of such eases, their limited requirements for judicial attention per case, diversion of large numbers of worthless check cases in selected circuits, and variability in numbers of such cases reported from county to county.
County courts with caseload forecasts at or exceeding 6,114 filings per judge are presumed to be operating at or above capacity. All of the counties for which we certify the need for an additional judge are projected to exceed the 6,114 threshold in 1998. We find it necessary to certify the need for five new county court judges for Fiscal Year 1998-99, one each for Leon, Duval, Polk, Hillsborough, and Broward counties. As with the circuit court judgeships, the decision not to certify the need for an additional county court judge in several counties at or near the threshold was difficult. Such county courts are realizing growing workload pressures and may require relief during the upcoming year. We are Committed to providing additional senior (retired) judge days and working with the respective chief judges on other measures to provide relief in those county courts. Their need for additional county court judgeships will be reexamined closely in next year’s certification process.
This Court is of the opinion that the serial addition of circuit and county court judges will not in and of itself ensure the increased efficiency and performance of the Florida State Courts System that are expected by the public. We will continue to rely heavily on the allocation of alternative resources as stated in our Fiscal Year 1998-99 Legislative Budget Request for additional senior (retired) judge days, law clerks, automation and other technology, and. specialized case management programs.
Full funding of the requests certified in this opinion is absolutely essential if Florida’s courts are to fulfill their constitutional mandate to resolve cases in a fair, impartial, and timely manner. Therefore, this Court encourages the Florida Legislature to authorize the judgeships certified herein, effective October 1,1998.
It is so ordered.
OVERTON, SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.

. The district courts of appeal did not request additional judges and are not included. Circuit and county courts that did not request additional judges are not included.